## WM. H. RUSSELL v. JOHN T. DODSON & CO.

1. VENDOR'S LIEN. *Inferior to rights assigned under vendee's deed of trust.
When.* A vendor's implied lien on land for unpaid purchase money is inferior to the rights acquired by creditors of the vendee under his deed conveying the land in trust, for their benefit, provided the conveyance in trust was made and its benefits accepted by such creditors before bill filed by the vendor to enforce his lien.

Cases cited: Green v. Demoss, 10 Hum., 376; Ellis v. Temple, 4 Cold., 322; Tharpe v. Dunlap, 4 Heis., 674.

Russell *v.* Dodson.

2. DEED OF TRUSTS. *How benefits waived. Attaching creditors.* A beneficiary under a deed of trust assigned his debt to parties claiming the land conveyed by the deed as redeeming creditors : *Held,* that this constituted a waiver or abandonment of his rights under the deed, and that by so doing he lost whatever priority he might have acquired by accepting the benefits of said deed. Such beneficiary, therefore, in a proceeding by the vendor to enforce his lien for unpaid purchase money, will not be allowed to fall back upon his rights under the trust deed, so as to overreach the lien of attaching creditors who had in the meanwhile filed their bill seeking to subject the land to the satisfaction of their debt.

3. REDEMPTION. *Under tax sales. Effect of.* The provision relating to the redemption of land sold under execution, or trust deeds, or mortgages, do not apply to sales of land for taxes. Tax sales being based on judgments against the land, not against the owners of land as judgment debtors. *Bona fide* judgment creditors can alone redeem under execution sales. While any person may redeem for the owner, under tax sales, without having a debt against him ; therefore, where judgment creditors sought to redeem by advancing the amount of their judgments upon a purchaser's bid at a tax sale : *Held,* that such redemption was void.

Code cited and construed : Secs. 638, 2124–2127–2130.

FROM GREENE.

From the Chancery Court at Greeneville.

No record can be found.

NICHOLSON, C. J., delivered the opinion of the court.

This a contest among the creditors of John T. Dobson as to their priorities of satisfaction out of a tract of land of 157 acres in Greene county. Russell had sold and conveyed the land to Dobson for about $4,400, taking his notes for about $1,500, balance of purchase money. He claims priority through his implied vendor's lien.

Dobson conveyed the land by trust deed to R. M. Alexander to secure Byars in about $1,212, and March in about $790, and A. L. W. Dobson in about $300. These creditors, or some of them, claim priority over Russell through the trust deed.

Four creditors of John T. Dobson filed attachment bills to reach his equitable interest in the land, and claim priority over all except Russell through their liens created by their attachments.

The several causes, in which the several claims are contracted, were consolidated and heard together.

1. As to the contest between Russell relying on his vendor's lien, and Byars relying on the deed of trust, the other beneficiaries under the trust deed failing to rely on it. Russell conveyed the legal title to Dobson, and reserved no lien for the balance of the purchase money. He alleges that he intended to reserve his lien, and that it was so understood between him and Dobson. This is denied by Dobson, but not in a manner to impress us as to the truth of the denial. The testimony of Russell, fortified by the circumstances detailed by him, and by the production of the notes, showing on their face that they were land notes, in connection with the legal presumption in his favor, satifies us that he intended to retain, and did retain, his vendor's lien. But Dobson conveyed the land to Alexander as trustee before Russell filed his bill to enforce his lien. If the beneficiaries accepted the trust for their benefit before Russell's bill was filed, they are entitled to priority: *Green* v. *Demoss*, 10 Hum., 376; *Ellis* v. *Temple*, 4

Cold., 322; *Tharpe* v. *Dunlap*, 4 Heis., 687. But the bill in this case alleges that none of the beneficiaries had accepted the provisions of the deed of trust, and the bill was taken for confessed as to all of them. There is proof tending to rebut the presumption arising from this failure to answer, especially on the part of Byars, but how the facts are, on this point, is by no means certain; nor is it necessary to decide that question, inasmuch as there is a subsequent transaction between the parties to the deed of trust, to be hereafter noticed, which makes it unnecessary to determine whether Byars accepted the deed of trust or not before Russell filed his bill.

2. It appears that during the pending of the suit of *Russell* v. *Dobson et al.*, John T. Dobson failed to pay the taxes on the land in controversy for the year 1876, and the same was reported and sold, when Isaac Ellis purchased at $20.10. He afterwards assigned his bid to Samuel Dobson, a brother of John T., and in turn Samuel assigned to J. C. Dobson, the father, and Thomas Alexander, the father-in-law of John T. Afterwards J. C. Dobson and Thomas Alexander became the owners by assignment of all the claims secured in the trust deed, amounting to about $1,400, except that of Byars. Judgments were confessed by John T. to J. C. Dobson and Thomas Alexander, and as judgment creditors they advanced the amount of their judgments upon the bid at the tax sale, and thereby claimed title to the land as redeeming creditors. Byars hearing of this proceeding, and fearing that his lien under the trust deed was endangered, through his agent, King,

entered into an arrangement with J. T. Dobson, J. C. Dobson, and Thomas Alexander, by which J. T. Dobson confessed judgments to Byars on his notes, amounting to $1,340, and assigned the same to J. C. Dobson and Thomas Alexander, to enable them to advance the same on their former advancements, thereby making the amount advanced on the bid at the tax sale about $2,500. The advance was so made by J. C. Dobson and Thomas Alexander, and they gave to Byars an obligation that, "if W. H. Russell gets judgment and redeems before the redemption of said land expires, then they will pay to L. C. Byars, or his agent, the full amount of the said three notes, with interest, immediately. But if the said land is not redeemed, and the said Dobson and Alexander obtain an indisputable title to the said land, then the said Dobson and Alexander agree to dispose of said land to the best advantage, and as soon as possible, and out of the proceeds, pay first to L. C. Byars, or his agent, the full amount of the said three notes, with interest from date." By this arrangement Byars clearly abandoned his lien under the trust deed, if he ever had one, and elected to rely upon the redemption under the tax sale. He charges, in his cross-bill, that he was defrauded by John T., J. C. Dobson, and Thomas Alexander, who induced him to enter into the arrangement as the surest way to save his debt.

We can see no evidence in this transaction that these parties were seeking to defraud Byars, whatever may have been their object as against Russell. If the redemption under the tax sale was invalid, then

Russell v. Dodson.

John T. Dobson, J. C. Dobson, and Thomas Alexander were mistaken on a question of law, and they succeeded in inducing Byars to fall into the same mistake.    If they had been correct in this view of the law, then they agree to pay to Byars his whole claim, either out of the redemption money that might be paid by Russell, or out of the proceeds of the sale of the land.    The whole scheme was one concocted by John T. Dobson, J. C. Dobson, and Thomas Alexander to give precedence to the claims in the trust deed over Russell's vendor's lien, and they induced Byars to become a party to the scheme.    He entered into it under no procurement of Russell, but to aid the other parties to defeat Russell's prior lien upon the land.    Under their view of the law, he abandoned his lien under the trust deed, and elected to make J. C. Dobson and Thomas Alexander his assignees, to procure satisfaction of his claims under the redemption of the tax sale.    This was a clear abandonment of his lien under the trust deed, and of consequence Russell was let in before him, if the redemption under the tax sale was invalid.

3. It is insisted for J. C. Dobson and Thomas Alexander, that they acquired a good title by their redemption under the tax sale.    By sec. 2124 of the Code, real estate sold for debt shall be redeemable at any time within two years after such sale; where it is sold under execution; where it is sold under any decree, judgment, or order of a Court of Chancery; where it is sold under a deed of trust or mortgage; and where it is sold for taxes, in which case, it is

to be redeemed in the manner prescribed in sec. 638, in which section it is provided, that "no conveyance of land sold for taxes shall be made to the purchaser by the officer till after the expiration of twelve months from the sale, within which time the same may be redeemed by the owner, his assignee, heirs, personal representatives, attorney, or any other person for him, upon payment, or tender of payment to the collector, for the use of the purchaser, his heirs, or assignee, of the amount of the taxes, costs, and changes, with interest at the rate of fifty per cent. per annum," etc.

By sec. 2127, if the purchaser is a *bona fide* creditor by judgment, etc., and within twenty days after the sale he makes an advance on his bid, etc., and by sec. 2130, real estate sold for debt and made redeemable, shall continue redeemable to the debtor and his creditors for two years after the sale, etc.

Construing these several provisions together, we are of opinion that it was the intention and meaning of the Legislature, that real estate sold for debt, when sold under execution, or judgment, or decree of a Chancery Court, or under a deed of trust or mortgage, it should be redeemable within two years, in the manner prescribed in the several sections referred to; but that lands sold for taxes are only redeemable within twelve months, in the manner prescribed in sec. 638. As lands sold for taxes are not sold under execution, nor under judgment or decree of the Chancery Court, or under trust deed or mortgage, the provisions made for their redemption have no application

to sales of lands for taxes, these sales being made upon judgments against the lands, not being judgments against the owners of the land on which executions can issue as in cases of judgments for debt against the debtors.  In the case of lands sold under execution, etc., none but *bona fide* judgment creditors can redeem.  In case of lands sold for taxes, any person may redeem for the owner without even having a debt against him.  We are, therefore, of opinion that the redemption of the land of John T. Dobson by J. C. Dobson and Thomas Alexander, was wholly void.

It appears that after Byars made the arrangement with J. C. Dobson and Thomas Alexander, to look to the redemption under the tax sales for satisfaction of his claim, and before he filed his cross-bill in which he sought to fall back upon the deed of trust, the attachment bills of Wills, Doak, and others were filed to subject John T. Dobson's equitable interest in the land to their several claims.  At that time the only lien resting on the land was the vendor's lien of Russell, inasmuch as Byars had abandoned his lien under the trust deed.

The result is that Russell is entitled to have his claim first satisfied; after him Wills, Doak, and the other attaching creditors, and after them Byars is entitled to satisfaction, but upon the terms of the arrangement between Byars, and J. C. Dobson, and Thomas Alexander, he is entitled to no decree against them.  If any surplus remains after satisfying Byars' claim, J. C. Dobson and Thomas Alexander will be

entitled to it *pro rata.* The land will be sold by the clerk of this court and the proceeds be applied as herein indicated, after paying the costs of this court and the court below.